IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,
                    Plaintiff,

                                        Criminal Action
         vs                             No. 15-227

JOHN FRANCIS LEY,
                    Defendant.

_____


         Transcript of sentencing proceedings held on Monday,
September 19, 2016, United States District Court, Pittsburgh,
Pennsylvania, before the Honorable Terrence F. McVerry, U.S.
District Court Senior Judge.


APPEARANCES:

For the Government:              Barbara K. Doolittle, Esq.
                                 US Attorney's Office
                                 700 Grant Street, Suite 4000
                                 Pittsburgh, PA 15219
                                 Barbara.Doolittle@usdoj.gov


For the Defendant:               W. Penn Hackney, Esq.
                                 Federal Public Defender's Office
                                 1001 Liberty Avenue
                                 1500 Liberty Center
                                 Pittsburgh, PA 15222-3716
                                 penn_hackney@fd.org


Court Reporter:                  Shirley Ann Hall, RDR, CRR
                                 6260 U.S. Courthouse
                                 Pittsburgh, PA 15219
                                 (412) 765-0408


Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.

PROCEEDINGS

1  (In open court.)

2       THE COURT:  Good morning; please be seated.

3       It is Monday, September the 19th, 2016, at

4  approximately 9:30 a.m., the date and time scheduled for

5  sentencing in the matter of United States of America versus

6  John Francis Ley at Case No. 15-227.

7       Would counsel for the Government and for Mr. Ley

8  kindly enter your respective appearances on the record.

9       MS. DOOLITTLE:  Good morning, Your Honor.  May it

10  please the Court, Barbara Doolittle on behalf of the

11  United States.

12       MR. HACKNEY:  Penn Hackney with the Federal Public

13  Defender for Mr. Ley.

14       THE COURT:  Thank you.

15       Since the guilty plea in this court on June 27, 2016,

16  I note for the record the preparation of the following by the

17  Probation Office:  A presentence investigation report prepared

18  on August 11, 2016, and an addendum to that report on — I

19  don't have the actual date down on that — there is an addendum

20  to that report and it's not on my desk right now — I think

21  that addendum was in September, September 25, 2016?

22       PRETRIAL AND PROBATION OFFICER:  August 25th,

23  Your Honor.

24       THE COURT:  August 25th, okay.

9:42:27AM 1         I would also note for the record the filing of the

2    following:  The Government's position with regard to sentencing

3    factors filed on August 18, 2016, which indicates that the

4    Government has no objections or modifications to the

5    presentence investigation report; the Defendant's objection to

6    the presentence investigation report and memorandum in

7    mitigation of sentencing along with Defendant's personal letter

8    to the Court filed on September 12, 2016, in which counsel for

9    Defendant argues that the two prior convictions set forth in

10    Paragraphs 35 and 36 of the presentence investigation report

11    should be counted as single -- as a single sentence for the

12    purposes of calculating Defendant's criminal history score; the

13    letter by Mary Beth Ackerman in support of Defendant which was

14    received by the Court on August 31, 2016; the Court's tentative

15    findings and rulings filed on September 14 in which the Court

16    overruled Defendant's objection to the presentence

17    investigation report and tentatively ruled that the two prior

18    sentences in Paragraphs 35 and 36 of the presentence

19    investigation report were properly counted by the Probation

20    Office.

21         On Friday there was a request for service of subpoena

22    pursuant to Rule 17(b) of the Federal Rules of Civil Procedure

23    filed on behalf of Mr. Ley, and the Court denied that

24    memorandum order because of the lack of any specificity as to

25    who that witness was, although the witness was named in the

9:44:25AM 1   proposed order, but there was nothing about the potentiality of

2   what the testimony would be if that witness were subpoenaed to

3   the court, and so therefore that was denied on Friday.

4          And also on Friday a supplemental addendum to the

5   presentence investigation report was filed by the Probation

6   Office and addressed the Probation Office's retort to the

7   Defendant's position that the two arrests or two experiences

8   with law enforcement in September that followed one day after

9   another were not being treated as one offense.  And so the

10   Probation Office agreed with the Court's finding in that same

11   regard.

12          So have the Defendant, Mr. Ley, and his attorney,

13   Mr. Hackney, reviewed the documents to which I have made

14   reference?

15          MR. HACKNEY:  We have, Your Honor.

16          THE COURT:  And has the United States also reviewed

17   these documents?

18          MS. DOOLITTLE:  Yes, Your Honor.

19          THE COURT:  Lastly, I also note for the record the

20   United States Supreme Court's decision in 2005 in the case of

21   United States versus Booker by which the United States

22   sentencing guidelines have been declared to be advisory

23   recommendations and are no longer mandatory.  Also under more

24   recent Supreme Court precedent, a sentencing court may not

25   presume –– that means take for granted –– that a guideline

9:46:10AM 1  advisory range of sentences is reasonable.  Accordingly, the

2  guidelines are not only not mandatory, they are also not to be

3  presumed or taken for granted as reasonable.

4          Mr. Hackney, would you kindly bring Mr. Ley forward

5  to the podium to be sworn.

6      (Defendant and Mr. Hackney approach.)

7      (Defendant sworn.)

8          THE COURT:  You are John Francis Ley, are you not?

9          THE DEFENDANT:  Yes.

10          THE COURT:  In a proceeding in this Court on June 27,

11  2016, you pleaded guilty to one count of a one-count indictment

12  that charged you with the crime of possession of a firearm

13  and/or ammunition by a convicted felon on or about

14  September 1st, 2015, in violation of Title 18, United States

15  Code, Section 922(g)(1).  Is that correct?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Following your guilty plea, do you recall

18  having indicated your willingness to be interviewed by the

19  Probation Office in connection with the preparation of a

20  presentence investigation report?

21          THE DEFENDANT:  Yes.

22          THE COURT:  I have reviewed the complete file in this

23  case, the Probation Office's presentence investigation report

24  and addendum, the Government's position with respect to

25  sentencing factors, you and your attorney's objection to the

9:47:54AM 1   presentence investigation report and your attorney's memorandum

2   in mitigation of sentencing, along with your well written

3   letter to the Court, the letters submitted by Miss Ackerman,

4   also well written, my tentative findings and rulings, and the

5   recommendation of the Probation Office with regard to an

6   appropriate sentence.

7          Pursuant to Federal Rule of Criminal Procedure

8   32(e)(3), I find that it is not appropriate to disclose the

9   sentence recommendation of the Probation Office to you, your

10   attorney, or the Government's attorney.  However, in

11   determining your sentence the Court will not otherwise consider

12   any factual or legal matter that has not previously been

13   disclosed to you and your attorney.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Mr. Hackney, having reviewed the

17   presentence investigation report and addendum, your objection

18   to the presentence investigation report and memorandum in

19   mitigation of sentencing, along with Mr. Ley's letter, the

20   Government's position statement with regard to sentencing

21   factors, and my tentative findings and rulings, and having

22   discussed them with your client, are there any errors in these

23   documents that you have not already called to the Court's

24   attention?

25          MR. HACKNEY:  No, sir.

9:49:25AM 1          THE COURT:  Mr. Ley, have you reviewed and discussed

2  with Mr. Hackney the presentence investigation report and

3  addendum, you and your attorney's objection to that report and

4  memorandum in mitigation of sentencing, along with your letter

5  to the Court, the Government's position statement, and my

6  tentative findings and rulings?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Is that correct, Mr. Hackney?

9          MR. HACKNEY:  Yes, sir.

10         THE COURT:  Miss Doolittle, what's the Government's

11  position with regard to the Court's tentative findings and

12  rulings?

13         MS. DOOLITTLE:  The Government's position is, quite

14  frankly, Your Honor, that we are grateful for your exposition

15  on the law in this regard because it matches the Government's

16  position, in particular with the discussion of the intervening

17  traffic stop, if you will, counted as an intervening arrest for

18  the purposes of alerting the Defendant to unlawful conduct and

19  giving him the opportunity to mend his ways, and then of course

20  very shortly thereafter he's continuing in the same type of

21  conduct.

22         So with respect to that in particular, but the

23  tentative findings in general, the Government doesn't have any

24  objections to the Court's tentative findings.

25         THE COURT:  Okay.

9:50:42AM 1        Mr. Hackney, what's the Defendant's position

2    regarding the Court's tentative findings and rulings?

3        MR. HACKNEY:  We too are grateful for the Court's

4    exposition of the law on the matter, Your Honor.  You came down

5    on one side.  I object to that decision.  I don't have anything

6    to add to the argument.  I think the Court laid it out fairly

7    and accurately, I just think that the side the Court came down

8    on was wrong, Your Honor.

9        THE COURT:  Okay.  The Court hereby adopts its

10    tentative findings and rulings and the relevant findings in the

11    presentence investigation report that are applicable to the

12    sentencing determination.

13        Mr. Hackney, as counsel for Mr. Ley, is there

14    anything you would like to say or present on behalf of your

15    client at this time?

16        MR. HACKNEY:  Yes, Your Honor.  With respect to our

17    witness, we decided we'd rather submit a brief statement in any

18    event rather than try to get him in and explain to the Court

19    why we needed him.  It refers to Paragraph 41 of the

20    presentence report.  There is a pending robbery charge and the

21    description of the conduct in there was sort of -- was odd in

22    my experience, so I wanted to check that and see if that was

23    accurate.  And we did talk to the victim who was a -- alleged

24    victim, who was a Devon Hale, and we did get a brief statement

25    from him essentially confirming the way it's set forth in

9:52:04AM 1    Paragraph 41.

2                    THE COURT:  Paragraph 41 of the psi?

3                    MR. HACKNEY:  Yes, Your Honor.  I offer that for the

4         Court's consideration as Defendant's Exhibit A.  I have given a

5         copy to the Government, Your Honor.

6                    THE COURT:  I was just going to ask that question,

7         thank you.

8                    Does the Government have any objection to the Court

9         accepting this statement for whatever it's worth?

10                   MS. DOOLITTLE:  I don't have an objection to that.  I

11        guess I'll reserve argument for the value of that.

12                   THE COURT:  Okay.  Let me take a quick look at this.

13           (Brief pause in proceedings.)

14                   THE COURT:  Okay.  So this is the guy who was working

15        at the station at the time.

16                   MR. HACKNEY:  Yes, Your Honor.

17                   THE COURT:  Okay, it's your turn.

18                   MR. HACKNEY:  Your Honor, I'm asking Your Honor to

19        consider a sentence closer to 37 months than to 46 months.  I

20        realize that 46 months is the low end of the range that

21        Your Honor has found; but as Your Honor also has pointed out,

22        that that is an advisory range.

23                   Mr. Ley's longest prior sentence was the

24        11-and-a-half to 23 month sentence that is referred to in

25        Paragraph 33, Your Honor, back in 2005.  Sentence was imposed

9:53:54AM 1  in 2007; the conduct was in 2005.  I would ask Your Honor to

2  consider that a sentence of much more than 36 months is not

3  conducive to the rehabilitation of Mr. Ley or to the safety of

4  the community or to promote the seriousness of the offense.

5          Mr. Ley, after that, those cases that were sentenced

6  in 2007, Your Honor, was able to show that he can live a

7  law-abiding, constructive life raising children, having a job,

8  in a committed relationship, and for almost eight-and-a-half

9  years, Your Honor.  So I think that this series of events in

10  late August -- August 31 and September 1 are not the last

11  chapter in Mr. Ley's life.  They're not illustrative of what

12  he's capable of, of what he can do and what he wants to do in

13  the future.

14          I don't think that the 46 months would serve to

15  impress upon him the need to not fall into that pattern again.

16  I think something less than that would do just as well -- would

17  do even better, in fact.

18          And I also point out, Your Honor, that the two points

19  that are assigned to the criminal history category in

20  Paragraphs 35 and 36 happened because of my dilatoriness, my

21  inability to move the case forward.  Mr. Ley had been asking me

22  to move his case forward starting in January, and I was just

23  not -- could not do so.  So if I had been more assiduous in my

24  responsibilities, we would have been here being sentenced

25  before those cases wrapped up, and therefore those points would

9:55:55AM 1    not be on the criminal history score.

2         So as a compassionate reason for considering a

3    sentence closer to 37 months than to 46 months, I submit that

4    the timing of getting those points that moved him from category

5    three to category four don't need to be insisted upon in the

6    Court's final sentencing decision.

7              THE COURT:  But they're real.

8              MR. HACKNEY:  Pardon?

9              THE COURT:  They're real.

10             MR. HACKNEY:  Yes.

11             THE COURT:  They happened.

12             MR. HACKNEY:  Yes, I know.  But I'm just saying —

13             THE COURT:  But you had a schedule of trials one

14    after another, after another, after another, after another; and

15    that's what you told me in your filings.

16             MR. HACKNEY:  I'm just saying —

17             THE COURT:  And that's real.  Maybe you could have

18    gotten another FPD to represent Mr. Ley in a sooner way.

19             MR. HACKNEY:  I'm by no means saying you have to do

20    anything about that, Your Honor.  I'm just — I'm just

21    appealing to your discretion —

22             THE COURT:  I know that you can't make me do it and I

23    appreciate your argument, but —

24             MR. HACKNEY:  That's all, it's just —

25             THE COURT:  It isn't — it isn't a fault that should

9:56:59AM 1  be assigned to you or that you should be assuming because you

2  were busy.

3          MR. HACKNEY:  I just wanted to suggest it to

4  Your Honor's discretion to consider in whatever way Your Honor

5  thinks is appropriate in deciding what the final sentence

6  should be under 3553(a).  The guidelines do work in a fairly

7  mechanical way in some instances.  This is just an example of

8  the way the mechanics worked to Mr. Ley's disadvantage, through

9  no fault of his in any way in terms of the timing.

10          THE COURT:  The Court — it doesn't fall on deaf ears

11  that Mr. Ley demonstrated for a period of time between bouts of

12  criminality that he could stay clean, but he didn't stay clean.

13  That's what brings him back here.  So, you know, to say he

14  should have a shorter sentence because he has proven in one

15  eight-year period of his life that he can stay clean, if he

16  did, he didn't get arrested, that's what happened.  We don't

17  know for sure, but he didn't get arrested, so theoretically he

18  wasn't engaging in criminal activity for that period of time

19  and he won't be punished as though he was engaging in criminal

20  activity.

21          But this is a new series of events that he did do, so

22  he returned to his former life.  We don't know — frankly,

23  there's no way for us to know that when he comes out of prison

24  this time whether he won't revert to his former criminality

25  type of life.  We don't know that.

9:58:50AM  1           MR. HACKNEY:  I —

2           THE COURT:  But there is one thing that he has made

3  clear to me and that I will recommend to the Bureau of Prisons,

4  and that is that he get drug rehabilitation treatment and that

5  he get mental health treatment.  Both of those are having —

6  have been requested and both of them will be recommended

7  because he likely needs that.  And he recognized that he needs

8  it because he put it in his own filing about mental health

9  treatment.  I had this drafted first, to just be the drug

10  treatment and counseling, but we'll expand that to accommodate

11  your request, and I think it's a good request.

12           Mr. Ley, do you have anything additional you would

13  like to say or present on your own behalf before sentencing?

14           THE DEFENDANT:  Yes, Your Honor.  I was immature and

15  irresponsible in my decisions and I would respect your decision

16  and try to work and build myself from it.  That's all.

17           THE COURT:  Okay.

18           MR. HACKNEY:  I wasn't suggesting, Your Honor, so

19  much a reward for the eight years, but suggesting that it helps

20  in the prognostication of what Mr. Ley is capable of, which to

21  me is a substantial mitigating factor that ought to operate to

22  adjust the sentence to some degree.

23           THE COURT:  I guess that same reasoning can be

24  applied to the prognostication that he return to criminal

25  conduct after eight years of being straight.  So that's not a

10:00:36AM 1  good sign.  But I do, frankly, commend you on trying to stay on

2  the straight and narrow for that number of years and working

3  and taking care of a family during that period of time, so that

4  is something to your credit and something for you to remember

5  when you're finished with whatever sentence is applied in this

6  case today.

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Okay?

9           Are you in any way dissatisfied with the service,

10  advice or representation provided by Mr. Hackney in this

11  matter?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  Miss Doolittle, does the Government have

14  any position or statement regarding sentence?

15           MS. DOOLITTLE:  Yes, Your Honor.  There are a few

16  things I'd like to place on the record.

17           Let me begin with the submission of Defense

18  Exhibit A, which is the statement from Devon Hale, the

19  individual who is, I suppose, listed as a victim in the still

20  pending crime at Paragraph No. 41 of the PSI.

21           THE COURT:  Yes.

22           MS. DOOLITTLE:  I just want to note I have read all

23  the police reports from that particular case, and it does not

24  appear that this statement, A, negates anything in the police

25  report nor does it say anything about Defendant's mens rea at

10:02:00AM 1   the time that he took those actions.  So to the extent that

2   there's any weight to be placed on this particular exhibit, the

3   Government's argument is that it should have no weight, it

4   really doesn't change anything.

5          To discuss for a moment the eight-and-a-half years

6   that the defense argues the Defendant had a clear record, I'd

7   like to clarify that a little bit.  The Defendant was sentenced

8   in January of 2007 with a sentence of 11-and-a-half to 23

9   months.  And in my discussions with the Probation Office, it's

10   unclear as to how many months he actually served.  But,

11   nonetheless, he had an almost two-year sentence and whatever

12   portion he didn't serve would have been on parole.

13          Following that, he had a five year probationary

14   sentence tacked onto his jail time.  And then in 2008 when he

15   was done with that sentence, he picked up another case where he

16   was given yet another five years of probation to be served

17   consecutively, based on what's in the PSIR.  So there's a long

18   term of probation that the Defendant was on and some length of

19   jail time; and that eight-and-a-half years he was on paper,

20   which is to say he might be good at staying clean, but it's

21   because he's under supervision.  It's not because he's out on

22   his own in the world and not responsible to somebody or not

23   accountable to somebody and under Court supervision.

24          In addition to that, during this eight-and-a-half

25   clean period, we also see that the Defendant was arrested a

10:03:37AM 1  couple of times, and that is in the PSIR.  It doesn't have any

2  points attached to it because they were arrests that were

3  ultimately dismissed or pled down to summaries, so not ultimate

4  convictions.  But at Paragraph 46 and 47 it appears they were

5  both dismissed.  The Defendant engaged in conduct and was in

6  trouble with the police, even if they were small cases, prior

7  to the instant incidence.  So again there is more to the story

8  than just eight-and-a-half years of good behavior, working,

9  clean, productive member of society type of behavior.

10      I did want to note again, Your Honor, that the

11  Government did appreciate your tentative findings and the legal

12  exposition.  In fact, I was sitting down to begin researching

13  to counter the defense's argument or find what research I could

14  find to say that a stop of that kind could be considered an

15  intervening arrest; and, frankly, the Court's tentative

16  findings and then the Probation Office's response obviated the

17  need for me to, you know, quote, beat the proverbial dead

18  horse.  But it is the Government's position what the Court has

19  found and what the Probation Office has found in that respect.

20      There's two other things that I think need to be

21  brought up based on the defense's sentencing memorandum.  The

22  first of these is with respect to the argument that the

23  Defendant here would have pled sooner but for counsel's

24  schedule, and that smells a lot like a preemptive claim of

25  ineffective assistance of counsel.  So I would like, if defense

10:05:23AM 1   counsel has a statement regarding that, for that to be placed

2   upon the record because this Defendant has pled without a plea

3   agreement.  And obviously as someone who has to handle the 2255

4   motions that come through from her own cases, I'm concerned

5   about the import of the defense counsel's statement in that

6   regard.

7        And I would say that even if counsel had had a wide

8   open calendar and could have accommodated Mr. Ley's request in

9   January, if in fact he did start making that request, it

10   presumes that the Court's calendar would have also been able to

11   accommodate the request and that this AUSA's calendar would

12   have been able to accommodate that request; and I don't think

13   that we can do that.

14        The other thing that it presumes is that certain

15   action would or wouldn't have been taken by the County

16   officials who would have brought him in and had him plead to

17   those cases before bringing him back into federal custody.  So

18   there are a lot of what ifs and a lot of question marks there,

19   and I think that takes away from the defense's argument that

20   had he had his own open calendar, Mr. Ley wouldn't have been

21   assigned those points.

22        And again the Government is concerned that this is a

23   preemptive claim of ineffective assistance of counsel.  If the

24   Court feels it necessary, the Government would be grateful for

25   the Court's finding that, in fact, at least based on the facts

10:06:36AM 1   that have thus far been presented, Mr. Hackney was not

2   ineffective.  And, of course, I don't know if Mr. Hackney has

3   anything more to say about that.

4        And then, finally, in the administrative resolution

5   court period of time, while the presentence investigation draft

6   was circulated, one of the things I brought to Mr. Hackney's

7   attention and did not hear any further about is the fact that

8   Mr. Ley is assigned an offense level of 20 points because under

9   2K2.1 he has a prior felony conviction for a crime of violence

10   or drug trafficking offense.  In his case the prior conviction

11   is for an aggravated assault.

12        As the Court may be very well aware, the Public

13   Defender's office has taken the position on many 2255s, as has

14   the defense counsel bar post—Johnson and post—Mathis and some

15   of the other cases that are being decided and have come down,

16   that an aggravated assault does not qualify as a crime of

17   violence for the purposes of 2K2.1.  It's the Government's

18   position that Johnson has nothing to do with 2K2.1 and the

19   findings there in the residual clause do not affect the fact

20   that an aggravated assault under Pennsylvania law is still a

21   crime of violence and is still effective and does not change

22   how we look at 2K2.1.

23        But defense counsel hasn't brought this up; and I

24   want to be very clear that if they're not going to bring it up,

25   they're waiving this issue on direct appeal.  As the Court well

10:08:15AM 1   knows, this is a morass and there is too much at stake here —

2            THE COURT:  That's an understatement.

3            MS. DOOLITTLE:  —— for continuing litigation.  So

4   again these are two issues that I am spotting now with the

5   hopes that we can resolve some of them or at least get

6   something on the record, those two issues being, one, the

7   Defendant counsel's implied, I'll say, ineffective assistance

8   of counsel claim and, two, the implied waiver of the 2K2.1

9   argument under Johnson.

10           THE COURT:  Well, when I made a comment about

11  Mr. Hackney's schedule as an assistant public defender, and

12  knowing that he's in this building and one of the courtrooms of

13  this building virtually every business day, and knowing what

14  the Public Defender's caseload is, there is nothing in which I

15  can observe Mr. Hackney's performance in this case to be

16  ineffective on behalf of Mr. Ley.  He's a very effective and

17  well-recognized criminal defense lawyer who's been doing his

18  job for the Public Defender for —— I won't say for as long as

19  I've been alive, but for as long as I've been here and before

20  that.  And so there's nothing ineffective about the manner in

21  which he represents his clients in general and specifically in

22  this case.

23           MS. DOOLITTLE:  Thank you, Your Honor.

24           MR. HACKNEY:  Your Honor, with respect to the Johnson

25  question, I appreciate the Government raising that.  We did

10:09:52AM 1    not — I did not file any written objection for the record.  I

2    do object.  I realize the district courts in this district have

3    not agreed with us on the point, and — but for whatever it's

4    worth, there may be a benefit to Mr. Ley in the future, I take

5    the contrary position to the Government and believe that

6    Johnson does apply to 2K2.1; and that if it did apply, that the

7    aggravated assault would not count as a crime of violence.

8         THE COURT:  Well, that issue is not before me today,

9    and — other than you're making it before me, but I'm not

10   getting into it because whenever and if ever such a motion is

11   filed, I don't be here anymore, so it will be before somebody

12   else and be decided by somebody else.

13        But I wanted in response to your argument to put on

14   the record that Mr. Hackney's not ineffective in Mr. Ley's

15   representation or any of his other clients on behalf of the

16   Public Defender's office.

17        MS. DOOLITTLE:  Thank you, Your Honor.

18        THE COURT:  Mr. Hackney, is there any legal cause or

19   reason then why sentence should not now be pronounced?

20        MR. HACKNEY:  No, sir.

21        THE COURT:  Under the now advisory provisions set

22   forth in the United States Sentencing Guidelines, your base

23   offense level, Mr. Ley, was a 20.  That's been increased by two

24   levels pursuant to United States Sentencing Guidelines

25   Section 2K2.1(b)(4)(A) because the firearm was stolen; and then

10:11:33AM 1  this number is reduced by three levels based on your acceptance

2  of responsibility and timely guilty plea.  Accordingly, your

3  total offense level is a 19.

4       Your criminal history category is a four, and you're

5  in Zone D for sentencing purposes under the advisory

6  guidelines.

7       The statute that applies to the crime to which you

8  have pled guilty and have been found guilty calls for a period

9  of incarceration of not more than ten years; if you were to be

10  eligible for probation, it would be from one to five years; if

11  imprisoned, supervised release of not more than three years;

12  and a fine up to $250,000; a special assessment of $100 per

13  count of the indictment to which you've been found guilty.

14       Now, the advisory guidelines that apply to this

15  violation are within the statute but less time, a period of

16  incarceration of between 46 to 57 months.  Under the guidelines

17  you're not eligible for probation because this crime is in

18  Zone D of the sentencing guidelines; supervised release of one

19  to three years if imprisoned; a fine in the range of 6,000 to

20  $60,000; and a special assessment of $100 per count of the

21  indictment to which you've been found guilty, which is — would

22  be a total of $100.

23       In accordance with Section 3553 of the Sentencing

24  Reform Act, in sentencing you the Court has taken into

25  consideration the following factors:  The nature and

10:13:33AM 1    circumstances of the offense as set forth in the indictment,

2    the plea hearing record and the presentence investigation

3    report, the history and characteristics of you, John Francis

4    Ley, which are set forth at length in the presentence

5    investigation report and include your personal and family data,

6    your physical condition, your drug abuse history, your mental

7    and emotional health, your educational and vocational skills,

8    and your employment record.

9           Mr. Ley, you're being sentenced today for possessing

10   a firearm after having previously been convicted of a felony.

11   You were apprehended with the firearm after a warrant was

12   issued for your arrest following the alleged attempt to rob a

13   gas station convenience store.  In addition to the firearm,

14   drugs and a large knife were also found in the vehicle at the

15   time.

16          You are nearly 31 years old.  Without question you

17   had a very difficult upbringing.  You had no relationship with

18   your father, who died of a drug overdose when you were young,

19   and your mother was herself a drug addict and could not support

20   you.  As a result, you were placed into the custody of your

21   grandfather at the age of 7.  You then spent a large portion of

22   your teenage years in and out of various juvenile

23   rehabilitation facilities after you became involved in the

24   juvenile justice system.

25          You eventually were able to earn your GED while in

10:15:20AM 1   one of those placement facilities.

2            You have never been married, but you do have one

3   biological daughter who resides with her mother, and you also

4   consider your girlfriend's daughter like she's your own child.

5            To your credit, you have a fairly consistent

6   employment record, having most recently worked at Gateway Grill

7   in Monroeville as a cook, making $13 an hour.  You worked there

8   until 2014 when you injured your right shoulder at work and had

9   to undergo surgery.  Prior to that, you worked as a cook at a

10  few other restaurants.

11           You report that your physical health is moderate.

12  You have a history of treatment for a broken jaw and, as

13  mentioned, the injury to your shoulder.  And as of the date the

14  PSI was prepared, you were awaiting an ultrasound for a lump on

15  your esophagus and one in your throat.  You have also

16  apparently been diagnosed with bipolar disorder and anxiety

17  disorder which long went untreated, but for which you have been

18  getting treatment since you've been incarcerated.

19           Moreover, as you put it eloquently in your letter to

20  the Court, you have fallen victim to the vicious cycle that has

21  followed your family and life, meaning drugs.  You have a long

22  history of serious drug and alcohol use and abuse which

23  includes daily use of Xanax, marijuana, prescription opiates

24  and, most recently, intravenous heroin which you started using

25  after the prescription opiates you were prescribed apparently

10:17:13AM 1   for your shoulder injury started to make you sick.

2          Mr. Ley, you don't need me to tell you this because

3   it's apparent that you also recognize it, but your addiction

4   has taken control of your life and led you back down a path of

5   criminality that began when you were just 13 years old.  You

6   have been convicted on multiple occasions for drug offenses,

7   burglary, theft and assault.  However, as Mr. Hackney notes in

8   his sentencing memorandum, your criminal behavior appears to

9   have taken place in three distinct phases:  During your youth,

10   in 2005 through 2006, and in 2015.

11          Between your conviction in 2007 and your convictions

12   in 2015, you appear to have lived a decent, hardworking life.

13   However, as the Government has pointed out, during that period

14   you were under supervision a good deal of the time.

15          You became a father, apparently kept your addiction

16   in check, and successfully completed a term of probation

17   without incident.  Unfortunately, when you once again came

18   under the grip of drugs, all this fell apart, and that's why

19   you find yourself before me today.

20          Based on my consideration of the record in this case,

21   I find that a term of imprisonment at the low end of the

22   guideline range is appropriate under the circumstances.  Such a

23   term of imprisonment will impress upon you the seriousness of

24   your offense and hopefully deter you from continuing to engage

25   in criminal behavior once you are released.  Most importantly,

10:19:09AM 1   though, this term of imprisonment will help you get the mental

2   health treatment that you need as well as the necessary drug

3   and/or alcohol treatment so that you may finally rid yourself

4   of the scourge of addiction and once again become a productive

5   member of society, something that you have shown you can do in

6   the past when you're provided some structure in your life.

7            Therefore, pursuant to the Sentencing Reform Act, it

8   is the judgment of the Court that you, John Francis Ley, are

9   hereby committed to the custody of the Bureau of Prisons to be

10   imprisoned for a term of 46 months.  Upon completion of your

11   term of imprisonment, you shall be placed on supervised release

12   for a period of three years.  Within 72 hours of your release

13   from the custody of the Bureau of Prisons, you shall report in

14   person to the Probation Office in the district to which you are

15   released.

16            While you are on supervised release you shall not

17   commit another federal, state or local crime and you shall

18   comply with the standard conditions that have been recommended

19   by the Sentencing Commission and adopted by this Court.  You

20   shall also comply with the following conditions.

21            You shall not illegally possess a controlled

22   substance.

23            You shall not possess a firearm, ammunition,

24   destructive device or any other dangerous weapon.

25            You shall participate in a mental health assessment

10:20:51AM 1    and/or treatment program approved by the Probation Office until

2    such time as you're released from the program by the Probation

3    Office.  You shall be required to contribute to the cost of

4    services in an amount determined by the Probation Office.

5    These costs shall not exceed the actual cost of the service.

6    The Probation Office is authorized to -- the Probation Office

7    is authorized to release the Defendant's presentence

8    investigation report to the treatment provider if so requested.

9            You shall submit your person, property, house,

10    residence, vehicle, papers, business, or place of employment to

11    a search conducted by a United States probation officer or a

12    law enforcement officer at a reasonable time and in a

13    reasonable manner based upon reasonable suspicion of contraband

14    or evidence of a violation of a condition of supervision.

15    Failure to submit to a search may be grounds for revocation.

16    You shall inform any other residents that the premises may be

17    subject to searches pursuant to this condition.

18            You shall participate in a program of testing and, if

19    necessary, treatment for substance abuse, with said program to

20    be approved by the Probation Office, until such time as you're

21    released from the program by the Court.  Further, you shall be

22    required to contribute to the cost of services for any such

23    treatment in an amount determined by the Probation Office but

24    not to exceed the actual cost.

25            You shall submit to one drug urinalysis within

10:22:43AM 1    fifteen days after being placed on supervision and at least two

2    periodic tests thereafter.

3             You shall not intentionally purchase, possess, and/or

4    use any substances designed to simulate or alter in any way

5    your own urine specimen.  In addition, you shall not purchase,

6    possess and/or use any devices designed to be used for the

7    submission of a third party urine specimen.

8             You shall cooperate in the collection of DNA as

9    directed by the Probation Office and pursuant to 28 CFR 2812,

10   the DNA Fingerprint Act of 2005, and the Adam Walsh Child

11   Protection and Safety Act of 2006.

12            A mandatory special assessment of $100 on each count

13   of conviction for a total of $100 is imposed pursuant to

14   Title 18, United States Code, Section 3013, which shall be paid

15   to the US District Court Clerk forthwith.

16            Based on the financial information contained in the

17   presentence investigation report, the Court finds that you do

18   not have the ability to pay a fine and therefore the Court will

19   waive any fine in this matter.

20            The Court will make the following recommendations to

21   the Bureau of Prisons:  That you be afforded the opportunity to

22   have ongoing substance abuse treatment and mental health

23   treatment while imprisoned.

24            This sentence as imposed is sufficient but not

25   greater than necessary to conform with the statutory

10:24:37AM 1   requirements and the Sentencing Guideline recommendation and to

2   avoid unwarranted sentencing disparities among similarly

3   situated Defendants.  The sentence is based on the need to

4   reflect the seriousness of the offense, to promote respect for

5   the law, to provide just and sound punishment for the offense,

6   to afford adequate deterrence to criminal conduct, to protect

7   the public from further crimes by you, and to provide you with

8   needed educational or vocational training or other correctional

9   training of which I hope you avail yourself in the most

10   effective manner while incarcerated.

11         Mr. Ley, you have the right to appeal from the orders

12   of this Court, the judgment of guilt, and/or the sentence

13   imposed today.  Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  You have the right to have a lawyer

16   represent you on appeal; and if you cannot afford a lawyer, one

17   will be appointed for you at no cost to yourself.  Do you

18   understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  If you cannot afford certified copies of

21   the necessary court records and transcripts, they'll be

22   furnished to you at the expense of the United States

23   Government.  Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Finally, you must know that if you do

10:26:00AM 1  wish to appeal, you must do so -- that is appeal -- within

2  fourteen days of today.  If you do not appeal within fourteen

3  days of today, you will lose your right to appeal.  Do you

4  understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  If you request, the Clerk of Court will

7  immediately prepare and file a notice of appeal on your behalf.

8  Do you want the Clerk of Court to prepare and file a notice of

9  appeal for you?

10           THE DEFENDANT:  No, sir.

11           MR. HACKNEY:  Your Honor, I will discuss appeal with

12  Mr. Ley; and if he chooses to appeal, we'll undertake the

13  responsibility to file the notice on time.

14           THE COURT:  Very good.  Thank you.

15           Defendant shall begin his sentence of imprisonment

16  effective immediately and is hereby remanded to the custody of

17  the United States Marshal and the Bureau of Prisons, and he

18  shall be given credit for all time heretofore served in federal

19  custody on this charge.

20           Counselors, are there any other matters for

21  consideration by the Court before this sentencing hearing is

22  concluded?

23           MS. DOOLITTLE:  Your Honor, I do apologize if I

24  missed it, but I just wanted to insure that forfeiture was part

25  of the sentence ordered, specifically for the Taurus pistol,

10:27:14AM 1  Model PT738, .38 caliber, bearing Serial No. 52390 D, as in

2  David, and there are 45 rounds of .380 ammunition with the mark

3  of Blazer.

4           THE COURT:  It is so ordered.

5           MS. DOOLITTLE:  Thank you, Your Honor.

6           THE COURT:  Any procedural objections to the

7  sentence?

8           MR. HACKNEY:  Your Honor, honestly I don't know what

9  that refers to.  I'm objecting to Your Honor's decision on the

10  two points for intervening arrest; and if there's a Johnson

11  issue, I don't want to be in the position of affirmatively

12  waiving that.

13           THE COURT:  Okay.  Well, you're not.  You haven't

14  affirmatively waived it.  Therefore, this sentencing hearing is

15  concluded and court is adjourned.

16           Good luck to you, Mr. Ley.

17           THE DEFENDANT:  Thank you.

18      (Hearing concluded at 10:25 a.m.)

19                     C E R T I F I C A T E

20  I, Shirley Ann Hall, certify that the foregoing is a correct

21  transcript for the record of proceedings in the above-titled

22  matter.

23

24                        s/Shirley Ann Hall
                         Shirley Ann Hall, RDR, CRR
25                        Official Court Reporter